## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTINE LOWMAN,

                           **PLAINTIFF,**

         **v.**

ARKOMA HOTSHOT SERVICE, INC.,

             **and**

RICK BENSON,

                   **DEFENDANTS.**

**CIVIL ACTION NO._____**

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY DEMAND

Plaintiff Christine Lowman by and through her attorneys, Bell & Bell, LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1.      This is an action for an award of damages, punitive damages, attorneys' fees and other relief on behalf of Plaintiff Christine Lowman, a former employee of Arkoma HotShot Service, Inc. ("HotShot") who was supervised in her employment by Rick Benson ("Benson" or "Mr. Benson"). Ms. Lowman has been harmed by the Defendants' sexual harassment, discrimination, fostering and perpetuating a hostile working environment, and retaliation for her complaints about sexual harassment and discrimination. This action arises under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 et seq. ("PHRA").

## JURISDICTIONAL STATEMENT

2.      This Court has original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331

and 1391.

3.      The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4),

which grants the District Court original jurisdiction in any civil action authorized

by law to be commenced by any person to recover damages to secure equitable or

other relief under any act of Congress providing for the protection of civil rights.

4.      This Court has supplemental jurisdiction over the Pennsylvania state law claims

herein pursuant to 28 U.S.C. § 1367.

5.      All conditions precedent to the institution of this suit have been fulfilled.  On

February 22, 2013, the United States Equal Employment Opportunity

Commission issued a Notice of the right to sue to Plaintiff.  This action has been

filed within ninety (90) days of Plaintiff's receipt of said Notice.  With respect to

the PHRA claims herein, a Complaint in this matter was filed with the

Pennsylvania Human Relations Commission more than one year ago.

## VENUE

6.      This action properly lies in the Eastern District of Pennsylvania, pursuant to 28

U.S.C. § 1391(b) because the claim arose in this judicial district.

7.      Venue in the Eastern District of Pennsylvania is also authorized pursuant to 42

U.S.C. § 2000(e) et seq.

## PARTIES

8.      Plaintiff Christine Lowman is an adult female citizen and resident of

Pennsylvania and the United States of America.

9.      Defendant HotShot was and is a business entity duly organized and existing under state law that acted as Plaintiff's employer, which does significant business within the Commonwealth of Pennsylvania, and is engaged in an industry affecting commerce.

10.      Defendant HotShot has operations at 514 Coker Street, Greenwood, Arkansas 72936.

11.      At all times material hereto, Defendant HotShot employed more than fifteen individuals.

12.      At all times material hereto, Defendant HotShot acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant HotShot and in furtherance of Defendant HotShot's business.

13.      At all times relevant hereto, each of the Defendants acted as a "person" and/or "employer" within the meaning of one or more of the laws at issue in this suit and is accordingly subject to the provisions of said laws.

14.      At all times relevant hereto, Plaintiff Christine Lowman was an "employee" of Defendants within the meaning of the laws at issue in this suit and is accordingly entitled to the protections of said laws.

15.      At all times relevant hereto, Defendant Benson aided and abetted discrimination, harassment, and retaliation by HotShot.

## FACTS

16.      Ms. Lowman was hired by HotShot in July 2011 as a shuttle driver and her training began on July 29, 2011.

17.      Ms. Lowman was supervised in her position by Rick Benson.

18.     Ms. Lowman was a loyal employee of HotShot with good performance

        records.

19.     Despite her loyalty, and consistent performance, Ms. Lowman was treated

        unfairly during her employment with HotShot and then terminated.

20.     There is ample evidence of sexual discrimination and harassment in the

        HotShot workplace directed towards Ms. Lowman.

21.     For example, during her hiring interview:

    a.   Mr. Benson asked Ms. Lowman both whether she was a single

         woman and whether she had a jealous boyfriend.  He stated that her

         job would require her to be away overnight and that he didn't need

         a jealous boyfriend coming around and starting problems;

    b.   Mr. Benson expressed his concern that his girlfriend, April, who

         sometimes served as a shuttle driver, would be upset because of

         how good looking Ms. Lowman was and the fact that, according to

         Mr. Benson, April was "no prize winner.";

    c.   Mr. Benson asked Ms. Lowman if she had children and how old

         they were claiming he needed to know to ascertain whether she

         could be "available at all times.";

    d.   Mr. Benson told Ms. Lowman that this was the oil industry, and he

         didn't want a whorehouse going on;

    e.   Mr. Benson said that if she were having sex with people she met on

         the job, she should keep it to herself and he didn't want to know

         about it; and

    f.   Ms. Benson explained that one female shuttle driver was in, or had

4

been in multiple sexual relationships with people she met on the job.

22.  Beginning as early as August 2011, and continuing throughout her employment, Ms. Lowman's passengers, almost exclusively males, made unwelcome and unsolicited sexual advances, and derogatory sexually explicit comments and jokes directed toward Ms. Lowman.  Additionally, these unwelcome and inappropriate actions made Ms. Lowman fear for her safety and feel uneasy while she was trying to perform her duties.

23.  For example, on August 10 and 11, 2011 during a shuttle run taking two HotShot employees (Jackie Jones and Rusty [LNU]) back to their hometown in Buckhannon, West Virginia:

    a.   Rusty insisted on watching pornography in the DVD player that was built in to the Ford Expedition Ms. Lowman was driving. When Ms. Lowman insisted that, at a minimum, the men had to listen to it through earphones so she wouldn't have to hear it, they laughed at her;

    b.  The men were constantly joking about their sexual thoughts;

    c.  The men were talking about obtaining the blue pill (Viagra) for their homecoming sexual escapades;

    d.  The men were "joking" about getting a hotel room for themselves and Ms. Lowman, explaining in violent sexual terms – "they would put a hurting on" her – what they wanted to do with her, and assuring her they would all have a good time;

    e.  The men also suggested that perhaps Ms. Lowman should just get a

room with Jackie Jones;

    f.   The men asked to take a break at a rest stop in Lamar, Pennsylvania.  Ms. Lowman learned when Rusty came out of the gas station that the men had wanted to stop for a Viagra substitute;

    g.   At the next rest stop, while Ms. Lowman was in inside, Rusty occupied the driver's seat and the men insisted that Rusty drive and Ms. Lowman sit in the back seat.  This made Ms. Lowman very uncomfortable and uneasy, especially with Rusty driving far in excess of the posted 70 MPH speed limit.

    h.   When Ms. Lowman asked Rusty to slow down, Jackie said, "What babe?"

    i.   Ms. Lowman reported these incidents to Mr. Benson immediately, and again, when she arrived at the HotShot yard in Athens, Pennsylvania in the morning.  Specifically, she complained to Mr. Benson about the men's sexual comments, sexual banter, sexual propositioning, and discussions of Viagra and Viagra substitutes.

    j.   Despite her complaints, when Mr. Benson called the men's boss, he only reported them for driving above the posted speed limit; and

    k.   Ms. Lowman was so upset by the incident that she requested that she never again be required to shuttle these two individuals.

24.   On August 23, 2011, Ms. Lowman was required to drive a HotShot employee, Carl, to Brookville to pick up a truck and deliver it to Troy, Pennsylvania.

25.   During the August 23, 2011 trip, Carl propositioned Ms. Lowman,

suggesting that he had previously shared cheap hotel rooms with Sheila, and suggesting that they could do that some time.  When Ms. Lowman indicated she was not willing to do that, Carl commented on the quality of Ms. Lowman's tan.

26. On August 25, 2011, April, Mr. Benson's girlfriend got upset with Ms. Lowman and with respect to a perceived paperwork mistake said, "Boy are you a freaking blonde…"

27. On October 22, 2011, Mr. Benson instructed Ms. Lowman to take Joe and Carl (HotShot employees) to Horseheads, New York to pick up two cement trucks for delivery to Montrose, Pennsylvania.  During that trip:

   a. Carl stated it was going to be a chilly night and that there would be frost;

   b. Joe told Carl and Christine Lowman that "Christine needs to take her top off, so we can see how cold its going to be tonight.";

   c. The men laughed at her, and then Carl said, "We need to see how perky they'll get.";

   d. The men joked about Ms. Lowman having her hand down one of their pants;

   e. When Ms. Lowman asked Joe to stop singing loud while she was maneuvering the truck in tight quarters, and suggested she might need to tape his mouth shut, Joe said "You want to tie my peter to the seat, so it doesn't move around."  The men then laughed at her;

   f. Ms. Lowman reported all of these situations immediately to Keith Miles;

    g.   When Ms. Lowman saw Joe peeing on the front tire of one of the trucks, Carl told Joe, "I [saw] Christine is trying to help you hold it."  Both men laughed;

    h.   The men continued to laugh and tell jokes about urinating – "hosing the truck tires down."

28.    Each time that Ms. Lowman was subjected to discrimination and harassment she complained to HotShot management including, among others, her direct supervisor that the comments and advances were making her feel uncomfortable and were inappropriate for the workplace.

29.    Despite her repeated complaints, HotShot did nothing to address the situation, or to ensure Ms. Lowman's safety while driving the same men who had harassed her.

30.    Immediately following Ms. Lowman's complaints to HotShot management, Ms. Lowman was subjected to clear and immediate retaliation when her hours and pay were cut drastically, amounting to what was, in essence, a termination.  Indeed, on the same day her hours were cut, Ms. Lowman was told regarding her future scheduling, "we'll call you when we need you."

31.    Ms. Lowman complained to Human Resources regarding the cut in her hours and pay, and the fact that it was related to her complaints about sexual harassment and discrimination.  HR did nothing to address Ms. Lowman's complaints in any way, and made no attempt to return Ms. Lowman to her prior status or return her to the schedule.

32.    Because of the circumstances of the treatment she was forced to endure,

and the severe and pervasive sexual comments and advances, all of which HotShot was aware, Ms. Lowman believes that her termination was motivated by sexual harassment, discrimination, and retaliation.

33. Despite Ms. Lowman's complaints, no discipline was ever meted out to her harassers and no action was taken to address her complaints.

34. Instead, Ms. Lowman was subjected to retaliation when she was terminated by Mr. Benson, allegedly as a result of being a poor employee who did not answer her phone.

35. HotShot's reason for Ms. Lowman's termination is suspect as pretextual in light of the close proximity in time to her complaints about sexual harassment and discrimination.

36. HotShot failed to take appropriate remedial measures and failed to prevent the harassment that Ms. Lowman was subjected to by Mr. Benson.

37. HotShot discriminated against Ms. Lowman on the basis of her sex and because of her complaints about sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

38. Defendants' decision to terminate Ms. Lowman was motivated by her complaints regarding discrimination, harassment, and retaliation.

39. HotShot permitted sexual harassment against Ms. Lowman by HotShot Employees subjecting Ms. Lowman to an unbearably hostile working environment despite her complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

40.     The actions of Mr. Benson and others, their failure to address the

        harassment and discrimination of Ms. Lowman, and other actions were in

        retaliation for Ms. Lowman's legally protected assertion of her rights with

        respect to, her opposition to, and her complaining about, the harassment

        and discrimination she was suffering.

41.     As a result of the harassment, discrimination, and retaliation described

        above, Ms. Lowman is left uncomfortable, emotionally distraught, and

        humiliated.

42.     As a result of the severe and pervasive sex discrimination, harassment, and

        retaliation suffered by Ms. Lowman, Ms. Lowman has suffered, and

        continues to suffer severe emotional distress.

43.     Mr. Benson and others all acted with the intent of causing, or in reckless

        disregard of the probability that their actions would cause Ms. Lowman

        severe emotional distress.

### COUNT I
### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e))
### Plaintiff v. Defendant HotShot

44.     Plaintiff Christine Lowman repeats and incorporates by reference the allegations

        of all previous paragraphs as fully as though the same were set forth at length

        herein.

45.     Based on the foregoing, Defendant HotShot has engaged in unlawful employment

        practices in violation of Title VII.

46.     In discriminating against Ms. Lowman and harassing her because of her sex, in

        fostering and perpetuating a hostile and offensive working environment, in

        retaliating against Ms. Lowman because of her complaints about sexual

harassment and discrimination, and in terminating Ms. Lowman, Defendant

HotShot violated Title VII of the Civil Rights Act of 1964.

47. Said violations were intentional and willful.

48. Said violations warrant the imposition of punitive damages.

49. As the direct and proximate result of Defendant HotShot's violation of Title VII,

Plaintiff Christine Lowman has sustained a loss of earnings, severe emotional and

psychological distress, loss of self-esteem, loss of future earning power, as well as

back pay, front pay, and interest due thereon along with and/or in addition to the

damages and losses set forth herein.

50. Plaintiff Christine Lowman is now suffering and will continue to suffer

irreparable harm and monetary damages as a result of Defendant HotShot's

actions unless and until this Court grants the relief requested herein.

## COUNT II
### (Pennsylvania Human Relations Act, 43 P.S. § 951)
### Plaintiff v. All Defendants

51. Plaintiff Christine Lowman repeats and incorporates by reference the allegations

of all previous paragraphs as fully as though the same were set forth at length

herein.

52. Based on the foregoing, Defendants have engaged in unlawful employment

practices in violation of the Pennsylvania Human Relations Act.

53. In discriminating against Ms. Lowman and harassing her because of her sex, in

fostering and perpetuating a hostile and offensive working environment, in

retaliating against Ms. Lowman because of her complaints about sexual

harassment and discrimination, and in terminating Ms. Lowman, Defendants

HotShot and Benson violated the Pennsylvania Human Relations Act.

11

54. Defendant Benson aided and abetted said discrimination, harassment, and retaliation.

55. As the direct and proximate result of the Defendants' violation of the PHRA, Plaintiff Christine Lowman has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon along with and/or in addition to the damages and losses set forth herein.

56. Plaintiff Christine Lowman is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' actions unless and until this Court grants the relief requested herein.

## **PRAYER FOR RELIEF**

57. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

**WHEREFORE**, Plaintiff Christine Lowman respectfully requests that this Court enter judgment in her favor and against Defendants:

a. Declaring that the acts and practices complained of herein violate Title VII;

b. Declaring that the acts and practices complained of herein violate the PHRA;

c. Awarding compensatory damages to Plaintiff Christine Lowman to make Plaintiff whole for all past and future lost earnings, benefits and earnings capacity which Plaintiff has suffered and will continue to suffer as a result of Defendants' conduct;

d.      Awarding compensatory damages to Plaintiff Christine Lowman for past

and future emotional upset, mental anguish, loss of reputation,

humiliation, loss of life's pleasures and pain and suffering;

e.      Awarding punitive damages to Plaintiff Christine Lowman;

f.      Awarding Plaintiff Christine Lowman costs of this action together with

reasonable attorneys' fees;

g.      Awarding Plaintiff Christine Lowman such other damages as are

appropriate under Title VII, the PHRA and any other applicable laws; and

h.      Granting such other relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff Christine Lowman hereby demands trial by jury as to all issues so triable.


_____
James A. Bell IV, Esquire
PA Attorney I.D.# 81724
Christopher A. Macey, Jr., Esquire
PA Attorney I.D.# 207800
Bell & Bell LLP
1617 JFK Blvd. – Suite 1020
Philadelphia, PA 19103
(215) 569-2500

Attorneys for Plaintiff Christine Lowman

DATED:      May 23, 2013